1
2
3
4                         UNITED STATES DISTRICT COURT

5                              DISTRICT OF NEVADA

6   ANETTE RINK, DVM, PhD,                    Case No. 3:20-cv-0505-RCJ-CLB

7          Plaintiff,                         **ORDER**

8   v.

9   STATE OF NEVADA, DEPARTMENT OF
    AGRICULTURE, *et al*.,
10
           Defendants.
11

12

13         Plaintiff Anette Rink, DVM, PhD, brought this suit against Defendants State of Nevada De-

14  partment of Agriculture (the Department), Jeri Williams-Conrad, Julian Joseph Goicoechea, DVM,

15  and Douglas Farris.  She brings eight claims arising from her allegations that, in her last months of

16  employment with the Department, she was subjected to sexual discrimination, sexual harassment,

17  retaliation, and employment conditions causing her constructive discharge.  The Defendants move

18  to dismiss (ECF No. 6), which Dr. Rink opposes (ECF No. 8).[1]  Having read and considered the

19  pleadings and arguments, the Court will deny the motion as to Dr. Rink's Title VII claims alleged

20  in Counts 1, 2, and 6 (only to the extent Count 6 alleges a Title VII), and will grant the motion as to

21  other claims.

22

23

24  _____

[1] The Defendants filed a reply (ECF No. 12) and an errata (ECF No. 22), and Rink filed a supplement
(ECF No. 36), which the Court has also considered in deciding the motion.

## I.    Background

Dr. Rink alleges the following in her complaint.  In 2002, Dr. Rink was employed as a Laboratory Supervisor at the Department's Animal Disease & Food Safety Laboratory (the Lab).  *See* ECF No. 1, at ¶¶ 1, 14.  On four occasions during her employment, Dr. Rink also served as the Acting State Veterinarian.  *Id*. at ¶14.  In February of 2016, Dr. Goicoechea was hired as the full-time State Veterinarian.  *Id*. at ¶ 15.  In January of 2017, Douglas Farris was hired as the Administrator of the Division of Animal Industries, which oversees the Lab and Dr. Rink.  *Id*. at ¶¶ 12, 16. Dr. Rink immediately noticed Farris treated female employees differently than male employees.  *Id.* at 16.  Farris "interacted with female employees with an aggressive stance and a demeaning manner." *Id*.  After this mistreatment, several female employees, including Dr. Rink left their jobs.  *Id.*  On May 6, 2017, Farris screamed at Dr. Rink, falsely accusing her of improperly authorizing a non-Department person access to, and use of, the Lab.  *Id*. at ¶ 17.  Farris would scream at female employees but did not treat male employees this way.  *Id.*  Farris alternated between blowing up at Dr. Rink and ignoring her.  *Id.*

Around May 10-12, Lucy Rechel, a member of the Nevada Cattleman's Association, left a voicemail for Dr. Goicoechea and then, having been unable to reach Dr. Goicoechea, called and talked with Dr. Rink.  *Id.* at ¶¶ 27-28.  Rechel's call concerned a rumor that a deceased employee of a cattle producer had Creutzfeldt-Jacob Disease.  *Id.* at ¶ 27.  Dr. Rink handled the call according to protocol for investigation and reporting, determining that the rumor was unfounded.  *Id.* at 28-30. In an e-mail string dated May 11-12, Dr. Goicoechea indirectly accused Dr. Rink of withholding information.

On May 15, 2017, Farris had a "confrontational and discriminatory conversation" with Dr. Rink.  *Id.* at ¶ 19.  Following this confrontation, Dr. Rink complained to Williams-Conrad, the

1   Deputy Director of the Department, about Farris's misogynistic management and disparate treatment

2   of female employees.  *Id.*  Williams-Conrad did not take any action.  *Id.*

3         On May 19, 2017, Dr. Rink complained to Dr. Goicoechea about Farris's treatment of her

4   and other female employees.  *Id.* at 20.  Dr. Goicoechea dismissed her concerns.  *Id.*  Farris ignored

5   Dr. Rink following her complaints to Williams-Conrad and Dr. Goicoechea, impeding her ability to

6   perform her work.  *Id.* at ¶¶ 21.

7         On May 25, 2017, Dr. Rink was given an "Overpayment" notice.  *Id.* at ¶ 23.  The notice

8   advised Dr. Rink of an overpayment of her salary since her last tenure as Acting State Veterinarian

9   in 2013, requiring that she repay $20,000.  *Id.* at ¶¶ 24-25.  Dr. Rink's salary was immediately

10  reduced.  *Id.* at ¶ 23.

11        Around June 1, 2017, the Department received a shipment of mosquitos from the Southern

12  Nevada Health Department (SNHD) suspected to be carriers of the Zika virus.  *Id.* at ¶ 35.  Dr. Rink

13  planned to run a series of tests and have results the following day.  *Id.* at ¶ 36.  Dr. Rink e-mailed

14  Dr. Goicoechea and Farris at 9:41 a.m. regarding the mosquitos and to state the Lab would verify

15  the species and let them know of the outcome as it became available.  *Id.* at ¶ 38.  Minutes later, Dr.

16  Goicoechea e-mailed Dr. Rink and accused her of telling SNHD that the Lab would be unable to test

17  the samples until the following week.  *Id.*  This was a fabrication.  *Id.* at ¶ 39.  Dr. Goicoechea copied

18  this e-mail to the director of the Department, as well as Williams-Conrad and Farris.  *Id.*  Dr. Rink

19  promptly responded and again informed Dr. Goicoechea that she had already told SNHD staff that

20  the Lab could run the assay for species verification and have the results the following day.  *Id.* at 40.

21        On June 9, 2017, Dr. Rink documented and voiced concerns about the mishandling and in-

22  adequate packaging of a shipment of suspected Anthrax.  *Id.* at 31.  The shipment originated from

23  Dr. Goicoechea's Elko laboratory.  *Id.*  The shipment arrived unlabeled, unannounced, undocu-

24  mented, and without the required external labelling and protective packaging.  *Id.*  Dr. Rink stated

her concerns in an e-mail.  *Id.*  The e-mail angered Dr. Goicoechea, and he did not take responsibility. *Id.*

On June 15, 2017, Dr. Goicoechea filed a written reprimand against Dr. Rink.  He dated the reprimand as of June 7, 2017.  *Id.* at ¶ 32.  The reprimand concerned Dr. Rink's handling of the rumor of Creutzfeldt-Jacob Disease in a deceased employee of a cattle producer.  *Id.* at ¶¶ 28-30, 33.

On June 19, 2017, Farris, Dr. Goicoechea, and Williams-Conrad used e-mails to fabricate events regarding the delays in testing the Zika samples.  *Id.* at ¶ 41.  They prepared a damaging story regarding Dr. Rink in preparing for an internal investigation.  *Id.*  The e-mails falsely state that the samples would not have been tested until the following week and accused Dr. Rink of "maliciously" delaying testing.  *Id.*

On June 26, 2017, Dr. Rink filed an internal grievance against Dr. Goicoechea, requesting that the written reprimand be removed from her file.  *Id*. at ¶ 34.

On July 5, 2017, Dr. Rink received a Notice of Internal Investigation regarding the testing of the mosquito samples from the SNHD.  *Id.* at ¶ 42.  Also on July 5, 2017, Dr. Rink filed a sexual harassment complaint against Dr. Goicoechea regarding an incident in which Dr. Goicoechea pan-tomimed pulling down his pants in a stripper style movement, then asked Dr. Rink if she wanted to look at what was there.  *Id.* at ¶ 44.

On July 7, 2017, Dr. Rink's computer was searched.  *Id.* at 45.  On July 11, 2017, Dr. Rink was falsely accused of having deleted all e-mails prior to June 22, 2017.  *Id.*  At around the same time, she was interviewed regarding an alleged breach of protocol regarding the testing of the mos-quito samples.  *Id.*

On July 17, 2017, Dr. Rink resigned from the Department.  *Id*. at ¶ 48.  Dr. Rink began a structured hand-over of her duties to a co-worker when she was escorted from the building on July 18, 2017.  *Id.*  On February 12, 2018, Dr. Rink electronically submitted an intake form with the

Nevada Equal Rights Commission (NERC).  ECF No. 36, Exh. 1.  On May 17, 2018, she signed her Charge of Discrimination, alleging gender discrimination, retaliation, and sexual harassment against the Department.  *Id.*

## II.    Analysis

### A.  Counts 1, 2, 3, 4, and 6 are not time-barred under 42 U.S.C. §2000e-5(e)(1) and Nev. Rev. Stat. 233.160(1)(b)

Federal law requires that an aggrieved party file a discrimination charge with the EEOC within 180 days of the alleged conduct, or within 300 days of the alleged conduct if first filed with a state agency (such as NERC in Nevada).  *See* 42 U.S.C. § 2000e-5(e)(1); *see also EEOC v. Dinuba Medical Clinic*, 222 F.3d 580, 585 (9th Cir. 2000).  The 300-day requirement is mandatory and operates as a statute of limitations.  *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1107 (9th Cir. 1998).  Likewise, Nev. Rev. Stat. 233.160(1)(b) instructs that a "complaint which alleges unlawful discriminatory practices in . . . [e]mployment or public accommodations must be filed with the Commission not later than 300 days after the date of the occurrence of the alleged practice."

Relying on Dr. Rink's Charge of Discrimination,[2] the Defendants assert Dr. Rink filed her charge of discrimination on May 25, 2018, 11 days outside of the 300-day period.

Considering only the complaint, and without reference to the Charge of Discrimination, Dr. Rink has alleged facts indicating that she filed her Charge of Discrimination outside of the 300-day period.  She asserts the last actionable act occurred on July 17, 2017. ECF No. 1 at ¶ 48.  As such,

---

[2]    The Defendants attached the Charge of Discrimination to their motion as Exhibit 1.  They argue that the Court can consider the Charge because its authenticity is not challenged and because it is referenced in Dr. Rink's Notice of Right to Sue letter, which she attached to her complaint.

the 300-day period would expire on May 14, 2018.[3]  Dr. Rink alleges, in her complaint, that she filed her charges of discrimination with the NERC on May 17, 2018, three days after the 300-day period expired.  *Id.* at ¶ 8.

However, as the Defendants have relied upon the Charge of Discrimination, the Court will do so also.  Dr. Rink signed the Charge of Discrimination on May 17, 2018, and NERC stamped the Charge as received on May 25, 2018.  Within the Charge of Discrimination, Dr. Rink notes that she filed her complaint with the NERC on February 12, 2018.[4]  In a supplement to her opposition, Dr. Rink has submitted a copy of her NERC intake questionnaire, which she submitted on February 12, 2018.  ECF No. 36, Exh. 1.  Finally, the Court notes that the EEOC Dismissal and Notice of Rights arising from her charge of discrimination, and which Dr. Rink included with her Right to Sue letter, indicates that the EEOC closed the case by adopting the findings of NERC.  Critically—for purposes of the present motion—the EEOC did not mark the selection on the notice form indicating that charge had been denied for failure to timely file the charge of discrimination.  As Dr. Rink submitted her intake questionnaire with the NERC in February 2018, and as the record does not establish that the intake questionnaire was not a charge of discrimination, the Court will deny Defendants' motion to dismiss Counts 1, 2, 3, 4, and 6 as time-barred.

---

[3]  As Dr. Rink acknowledges in her opposition, the 300th day following July 17, 2017, is Sunday May 13, 2018.  For purposes of this motion, the Court assumes the filing period would extend to the following business day, on Monday, May 14, 2018.

[4]  The Defendants assert, in their reply, that they are perplexed by Dr. Rink's argument in opposition that she filed her charge of discrimination on February 12, 2018, arguing that Dr. Rink has not provided any evidence to support this assertion.  The Defendants apparently ignore the Charge of Discrimination they submitted into the record and which provides the evidence supporting Dr. Rink's assertion that she filed her charge of discrimination on February 12, 2018.

1    **B.  Counts 5, 7, and 8 are barred by Nevada's statute of limitations.**

2        Counts 5, 7, and 8 are state-law claims governed by Nevada's two-year statute of limitations.

3    In Nevada, "[a]n action upon a contract, obligation or liability not founded upon an instrument in

4    writing" must be commenced within four years, while "an action to recover damages for injuries to

5    a person or for the death of a person caused by the wrongful act or neglect of another" must be

6    commenced within two years.  Nev. Rev. Stat. Ann. § 11.190(2)(c) and (4)(e).  In broad terms, the

7    Nevada Supreme Court has long recognized that the four-year limitations period applies to claims

8    sounding in contract, while the two-year limitations period applies to claims sounding in tort.  *See*

9    *Meadows v. Sheldon Pollack Corp.*, 92 Nev. 636, 637 (1976).

10       Dr. Rink asserts that her state-law claims that are related to her Title VII claims should be

11   equitably tolled while her charge of discrimination was investigated by NERC.  Otherwise, she

12   notes, an employer could argue the state-law claims were premature.  Dr. Rink does not, however,

13   direct the Court's attention to any precedent suggesting that an employer would be successful in a

14   moving to dismiss, as prematurely filed, tort claims that arise from the same facts as statutory claims

15   that are in the process of being exhausted.  Nor does Dr. Rink direct the Court's attention to any

16   precedent from Nevada suggesting that the filing of a charge of discrimination tolls the statute of

17   limitations for state tort claims that arise from the same facts as the statutory discrimination claims.

18   Dr. Rink has not met her burden of showing that the Nevada limitations period was tolled by the

19   filing of her charge of discrimination with the NERC.

20       Also, without citation to precedent, Dr. Rink asserts that her state-law claims in Counts 5, 7,

21   and 8 are governed by the four-year limitations period.  The assertion is without merit.  Nevada

22   applies a two-year statute of limitations to claims sounding in tort.  *See State Farm Mut. Auto. Ins.*

23   *Co. v. Fitts*, 120 Nev. 707, 709, (2004) (citing Nev. Rev. Stat. 11.190(4) and holding that a "two-

24   year statute of limitations govern[s] tort actions brought in Nevada."); *see also Palmer,* 106 Nev. at

7

153., (1990) (applying the two-year statute of limitations to a claim for discriminatory discharge). Here, Dr. Rink's claim for tortious discriminatory discharge in Count 5 occurred no later than July 17, 2017.   To be timely, she was required to file her claim for tortious discharge within 2 years, or no later than July 17, 2019.  She filed the instant complaint on September 9, 2020, more than three years after her claim for tortious discharge in violation of public policy accrued.  As such, Count No. 5 is barred by Nevada's two-year statute of limitations and must be dismissed as a matter of law.

In Count No. 7, Dr. Rink asserts a state-law claim for civil conspiracy, alleging that Williams-Conrad, Dr. Goicoechea, and Farris conspired to harm the Plaintiff and proximately caused the Plaintiff to suffer emotional distress and mental anguish.  See ECF No. 1, at ¶¶ 94–95.  As noted above, Nevada applies a two-year statute of limitations to tort actions, which would include Dr. Rink's claim for civil conspiracy.  *See Fitts*, 120 Nev. at 709.  Nevada's two-year statute of limitations, in 11.190(4)(e), applies to all claims for injury to a person caused by the wrongful act of another, which Dr. Rink has alleged in Claim No. 7.  *See* ECF No. 1, at ¶¶ 94–95.  Therefore, since the acts alleged in Count No. 7 appear to have occurred no later than July 11, 2017, more than three years before the complaint was filed, Count No. 7 is barred by Nevada's two-year statute of limitations and must be dismissed as a matter of law.

Dr. Rink asserts, in Count No. 8, a state-law claim of intentional infliction of emotional distress.  This claim is also a tort and thus governed by Nevada's a two-year statute of limitations.  *See Mackintosh v. California Fed. Sav. & Loan Ass'n, 113 Nev. 393, 408, 935 P.2d 1154, 1164 (1997)*; *Olivero v. Lowe, 116 Nev. 395, 398, 995 P.2d 1023, 1025 (2000)*.  Therefore, since Dr. Rink alleges that the Defendants' acts occurred prior to July 17, 2017, more than three years before she filed her complaint, Count No. 8 is also barred by the two-year statute of limitations and must be dismissed as a matter of law.

**C.  The Department cannot be sued in federal court for Dr. Rink's state-law claims**

Immunity from suit is a fundamental aspect of the state sovereignty that has existed since before the United States Constitution was ratified.  *Alden v. Maine*, 527 U.S. 706, 713 (1999).  The Eleventh Amendment to the U.S. Constitution confirms the existence of state sovereign immunity and bars suit in federal court by a citizen against a state or its agencies. *Id.*; U.S. Const. amend. XI. This bar from suit has been extended to actions by a citizen against her own state.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). States are therefore immune from suit brought in federal court by citizens of their own state unless the state expressly waives immunity or Congress abrogates immunity by statute.  *Id*. at 101; *Romano v. Ducharme*, 169 F.3d 1182, 1185 (9th Cir. 1998).  Indeed, federal courts lack subject matter jurisdiction when a state has not waived its sovereign immunity.  *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1026 (9th Cir. 2010).  The State of Nevada has explicitly refused to waive its sovereign immunity. *See* Nev. Rev. Stat. 41.031(3).  As such, Nevada's retention of sovereign immunity "bars all actions against Nevada in federal court, including those brought by Nevada residents."  *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999).

Dr. Rink notes, correctly, that Congress has abrogated state sovereign immunity from suits brought pursuant to Title VII. See 42 U.S.C. § 2000e(a); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 449–450 (1976).  The Defendants' sovereign immunity argument, however, was directed solely at Dr. Rink's claims brought against the Department pursuant to Nev. Rev. Stat. Chapter 613.  In her opposition, Dr. Rink has not offered any argument suggesting that Nevada has waived, or that Congress has somehow abrogated, Nevada's sovereign immunity from lawsuits brought in federal court for state law claims under Nev. Rev. Stat. Chapter 613.  Accordingly, the Court must dismiss Counts 3, 4, 5, and that portion of Count 6 brought pursuant to Nev. Rev. Stat. Chapter 613.

### D.  Dr. Rink has sufficiently pled sex discrimination in Count No. 1

To state a prima facie case of disparate treatment, a plaintiff must allege facts showing that: (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably.  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).  The Defendants argue that Dr. Rink has failed to allege that she was qualified for her position, has failed to allege an incident in which male employees were treated more favorably than female employees, and fails to allege an adverse employment action.  The Court disagrees.

Dr. Rink's allegations that she was hired and has worked in the Department since December 2002, that she holds two advanced degrees as a doctor in veterinary medicine and a PhD in molecular genetics, that she is considered by her peers to be an excellent team member and manager, that she has supervised a team of five people, and that she has served as the Acting State Veterinarian several times sufficiently raise the plausible inference that she was qualified for her position.

Dr. Rink's allegations that she has received unfair written reprimands, was subjected to an internal investigation for filing a grievance complaining of Dr. Goicoechea's sexually explicit behavior and was subjected to work conditions resulting in her constructive discharge sufficiently raise the plausible inference that she was subjected to adverse employment actions.[5]

---

[5]     Dr. Rink's allegation that, in the week following one of her complaints, her pay status was reviewed, her pay was reduced, and that she was given a notice of an overpayment of her salary (that she was required to re-pay) does not raise a plausible inference of an adverse employment action.  She has acknowledged that, when she was serving as Acting State Veterinarian, she received an additional amount of salary for that service.  Dr. Rink also acknowledges, in her complaint, that she continued to receive this additional salary after she relinquished those duties in 2013.  Dr. Rink's allegations suggest that that the Department had erred in continuing to pay her the additional salary after she stopped serving as the Acting State Veterinarian.  She has not alleged facts suggesting that the Department was prohibited from correcting this error.  The Department's correction of its error cannot constitute an adverse employment action.  That this correction occurred nearly four years late and was triggered by her complaint does not transform the correction into an adverse employment action.

10

Dr. Rink's allegations that Farris belittled, shouted at, ignored and brought women (including Dr. Rink) to tears, but that he did not treat men in this manner sufficiently alleges that similarly situated persons outside the protected class were treated more favorably while working at the Department.

The Court finds that Dr. Rink has sufficiently alleged facts that she was subjected to discrimination arising from disparate treatment because of her sex and will deny the Defendants' motion to dismiss Count 1.

### E.   Dr. Rink has sufficiently pled retaliation for protected conduct in Count No. 2

To establish a prima facie case of discriminatory retaliation, a plaintiff must allege that: (1) she engaged in activity protected under Title VII; (2) her employer subjected her to an adverse employment action; and (3) the adverse action was causally linked to the protected activity. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987). To show the requisite causal link, a plaintiff must allege sufficient facts to raise the inference that the protected activity was the reason for the adverse action. *See e.g. Cohen v. Fred Meyer, Inc*., 686 F.2d 793, 796 (9th Cir. 1982).

"With respect to the first element, an employee has engaged in a protected act if he (1) has opposed any practice made an unlawful employment practice by this subchapter; or (2) has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *Brophy v. Day & Zimmerman Hawthorne Corp*., 799 F. Supp. 2d 1185, 1199 (D. Nev. 2011) (citing 42 U.S.C. § 2000e–3(a) (2006). In opposing the motion to dismiss, Dr. Rink identifies the following as the protected activities she alleged in her complaint. She complained to the Williams-Conrad of Farris' May 15, 2017, confrontational and discriminatory conversation with her. On May 19, 2017, she raised her complaints about Farris treatment of women in the Lab to Dr. Goicoechea. On June 9, 2017, she voiced her concerns regarding the mishandling and inadequate packaging of suspected Anthrax from Dr. Goicoechea's Elko laboratory. And, on June 26, 2017, she filed a

grievance against Dr. Goicoechea to request that the June 15, 2017 reprimand (which she alleges was done in retaliation for documenting Dr. Goicoechea's handling of the suspected Anthrax) be removed from her file.  Only the first two of these actions, in which Dr. Rink opposed Farris' treatment of females in the Lab to Williams-Conard and Dr. Goicoechea, are protected activity under Title VII.  The Court notes, in addition, that Dr. Rink alleged that she filed a complaint that Dr. Goicoechea engaged in sexually explicit behavior on July 5, 2017, which complaint would also constitute a protected activity.

Dr. Rink identifies, in her opposition, the following as the adverse employment actions she alleged in her complaint.  First, she alleges her salary was reviewed and her pay was reduced.  As noted above, this correction of Dr. Rink's salary does not constitute an adverse employment action.  Second, she alleges that Dr. Goicoechea and Farris reprimanded her purportedly for her handling of the rumor that an employee of a cattle producer had died of Creutzfeldt-Jacob disease.  Third, she alleges an internal investigation was initiated against her purportedly for her handling of the mosquito testing and analysis for SNHD.  The Court finds, for purposes of this motion, that the latter two of these allegations identifies an actionable adverse employment action.

Dr. Rink identifies, in her opposition, the following two allegations of her complaint as showing a causal link between her protected activity and the adverse actions.  First, she points to her belief that the June 15, 2017, reprimand was back-dated to June 7, 2017, to make it look less retaliatory for her criticism of Dr. Goicoechea's handling of the suspected Anthrax on June 9, 2017.  Even assuming the temporal relationship of Dr. Rink's complaints and Dr. Goicoechea's reprimand is sufficient to show a causal link, that causal link is irrelevant.  As noted previously, Dr. Rink has asserted that the June 15, 2017, reprimand was in retaliation for her complaint regarding the handling of the suspected Anthrax.  This complaint is not a protected activity under Title VII.

Second, Dr. Rink points to her belief that the internal investigation, initiated on July 5, 2017, for her handling of the mosquito testing and analysis in early June 2017, was in retaliation for her July 5, 2017,[6] grievance against Dr. Goicoechea for engaging in sexually explicit behavior. While Dr. Rink did not identify the filing of her July 5, 2017, grievance as a protected activity in her opposition, she did allege this conduct in her complaint. Further, the temporal relationship between the complaint and the initiation of the investigation, both of which occurred on July 5, 2017, raises a plausible inference of a causal link. Accordingly, the Court finds that Dr. Rink has sufficiently alleged that she was subjected to retaliatory conduct for the filing of her grievance against Dr. Goicoechea for engaging in sexually explicit behavior.

**F.   Dr. Rink has sufficiently pled a hostile work environment in Count No. 6.**

To state a hostile work environment claim, a plaintiff must allege that (1) the defendants subjected her to verbal or physical conduct based on a protected characteristic; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008). "The working environment must both subjectively and objectively be perceived as abusive." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000) (internal quotation marks omitted). Whether an environment was hostile or abusive is determined by looking at the totality of the circumstances; "[t]hese may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "No one single factor is required." *Id*.

---

[6]     In ¶42, Dr. Rink alleges she made this complaint on June 26, 2017. In ¶44, she alleges she filed this complaint on July 5, 2017.

Dr. Rink has sufficiently alleged that the work environment at the Lab was hostile to females. She has alleged that the women working in the Lab were constantly belittled, shouted at, brought to tears, and ignored.  She has alleged that Farris, the administrator of the Lab interacted with women in an aggressive and demeaning manner but was cordial and jovial with men.  Farris publicly screamed at Dr. Rink and falsely accused her of misconduct.  Following Dr. Rink's complaint of Farris' behavior, he ignored her.  Dr. Goicoechea, to whom Dr. Rink had complained of Farris' behavior, directed sexually explicit conduct toward Dr. Rink by pretending to drop his pants, and asking her if she wanted to look at what was there.  The totality of these allegations sufficiently raises the plausible inference that the Lab was objectively a hostile work environment and was subjectively a hostile work environment to Dr. Rink.  The Court will not dismiss this claim.

## III.    Conclusion

Dr. Rink has sufficiently alleged, and timely brought, Title VII claims for sexual discrimination and harassment, and a Title VII claim retaliation against her employer, the Nevada Department of Agriculture, as alleged in Counts 1, 2, and 6.  Dr. Rink cannot sue the Department of Agriculture in federal court for her state-law claims alleged in Counts 3, 4, 5, and 6.  Dr. Rink is barred by Nevada's statute of limitations from bringing her claims alleged in Counts 5, 7, and 8.  As Dr. Rink cannot maintain her claims, in Counts 7 and 8, against Defendants Dr. Goicoechea, Williams-Conrad, and Farris, they will be dismissed with prejudice.  Therefore, for good cause shown,

IT IS HEREBY **ORDERED** that Defendant's Motion to Dismiss (ECF No. 6) is DENIED as to Dr. Anette Rink's Title VII claims alleged in Counts 1, 2, and 6; and is GRANTED as to Dr. Anette Rink's state-law claims alleged in Counts 3, 4, 5, 6, 7, and 8.

IT IS FURTHER **ORDERED** that Counts 3, 4, and 6 (to the extent it also alleges a state-law claim) are DISMISSED without prejudice but without leave to amend.

14

1    IT IS FURTHER **ORDERED** that Counts 5, 7, and 8 are DISMISSED with prejudice as

2  barred by the statute of limitations.

3    IT IS FURTHER **ORDERED** that Defendants Dr. Julian Joseph Goicoechea, Douglas Far-

4  ris, and Jerry Williams-Conrad are DISMISSED with prejudice.

5    IT IS FURTHER **ORDERED** that the stay of discovery (See ECF No. 35) in this matter is

6  LIFTED.  The parties shall meet and confer within 21 days and file an updated discovery plan and

7  scheduling order.

8    DATED THIS 9th day of September, 2021.

9    _____

10   Robert C. Jones
     United States District Judge